# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

American Italian Pasta Company,    )
    )
    Plaintiff    )
    )    02-0594-CV-W-SOW
v.    )
    )
New World Pasta Company,    )
    )
    Defendant.    )
    )
    )
AND RELATED COUNTERCLAIM    )
_____    )


## NEW WORLD PASTA'S REPLY SUGGESTIONS IN SUPPORT OF
## ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

### ORAL ARGUMENT IS REQUESTED


Forrest A. Hainline III
District of Columbia Bar No. 376957
Admitted Pro Hac Vice
Law Office of Forrest A. Hainline III
5335 Wisconsin Avenue, N.W. Suite 440
Washington, D.C. 20015
(202) 966-1962 (Phone)
(202) 966-1891 (Fax)
Aikidolaw@aol.com

**Attorneys for Defendant and Counterclaimant
New World Pasta Company**

[Additional counsel on signature page]

# TABLE OF CONTENTS

I.     THE CLAIM "AMERICA'S FAVORITE PASTA" IS NOT PUFFING .............. 1

II.    THE CLAIM "AMERICA'S FAVORITE PASTA" IS LITERALLY FALSE ..... 2

       A.     AIPC's Misuse of Trademark Decisions ...................................... 2

       B.     NAD ................................................................................................ 4

       C.     AIPC's Web Search ...................................................................... 4

III.   THE CLAIM "AMERICA'S FAVORITE PASTA" CONVEYS A FALSE
       MESSAGE TO CONSUMERS ............................................................... 5

       D.     Dr. Wind's Study Is Not Fairly Disputed .................................... 6

       E.     The Levels of Deception are Significant ...................................... 8

       F.     The Irrelevance of Out-of-Context Verbatims............................. 9

       G.     What Webster Pretends AIPC Meant to Say Is Irrelevant ....................... 10

IV.    AIPC'S WILLFULNESS......................................................................... 10

V.     CONCLUSION ...................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Abdallah v. Pileggi, 153 F.3d 948, 1998 WL 180491 (Fed. Cir. 1998)* .......................... 10

*Castrol Inc. v. Pennzoil Co., 987 F.2d 939 (3rd Cir. 1993)* ................................ 1

*Charter Communications, Inc. v. Southwestern Bell Tel. Co., 202 F.Supp.2d 918 (E.D. Mo. 2001)* ....................................................................................................... 2, 10

*Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co., 228 F.3d 24 (1st Cir. 2000)* ................................................................................................................... 1

*Coca-Cola Co. v. Tropicana Products, Inc., 690 F.2d 312 (2nd Cir. 1982)* ..................... 8

*Commercial Union Ins. Co. v. Schmidt, 967 F.2d 270 (8th Cir. 1992)* ............................ 1

*Crowell v. Campbell Soup Co., 264 F.3d 756 (8th Cir. 2001)* ........................................ 6

*Dulany v. Carnahan, 132 F.3d 1234 (8th Cir. 1997)* ..................................................... 6

*Evers v. General Motors Corp., 770 F.2d 984 (11th Cir. 1985)* ...................................... 7

*Fed. Deposit Ins. Corp. v. Bell, 106 F.3d 258 (8th Cir. 1996)* ........................................ 6

*Goya Foods, Inc. v. Condal Distrib., Inc., 732 F.Supp. 453 (S.D.N.Y. 1990)* ................... 8

*Grotrian, Helfferich, Schulz, Th. Steinweg Nachf v. Steinway & Sons, 365 F.Supp. 707 (S.D.N.Y. 1973)* ............................................................................................... 8

*Humble Oil & Refining Co. v. American Oil Co., 405 F.2d 803 (8th Cir. 1969)* .............. 8

*Jackson v. Anchor Packing Co., 994 F.2d 1295 (8th Cir. 1993)* ..................................... 7

*James Burrough Ltd. v. Sign of the Beefeater, Inc., 540 F.2d 266 (7th Cir. 1976)* ............ 9

*Jockey Int'l, Inc. v. Burkard, 185 U.S.P.Q. 201 (S.D. Cal. 1975)* ................................... 9

*Lon Tai Shing Co., Ltd. v. Koch+Lowy, 1992 WL 18806 (S.D.N.Y. 1992)* ....................... 9

*Marshall v. UNUM Life Ins. Co., 13 F.3d 282 (8th Cir. 1994)* ........................................ 6

*Matthiesen v. Banc One Mortgage Corp., 173 F.3d 1242 (10th Cir. 1999)* ..................... 8

*McNeilab, Inc. v. American Home Products Corp.*, 675 F.Supp. 819 (S.D.N.Y. 1987) ..... 8

*Mid-State Fertilizer Co. v. Exchange National Bank Of Chicago*, 877 F.2d 1333 (7th Cir. 1989) ......................................................................................................................... 7

*Mutual Of Omaha Insurance Co. v. Novak*, 836 F.2d 397 (8th Cir. 1988) ........................ 8

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 129 F.Supp.2d 351 (D.N.J. 2000) ......................................................................... 9, 10

*RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058 (2nd Cir. 1979) ............................. 9

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997) ..................... 1, 6

*United Indus. Corp. v. The Clorox Co.*, 140 F.3d 1175 (8th Cir. 1998) ........................... 1

**Statutes**

15 U.S.C. § 1052(a) ........................................................................................................ 4

15 U.S.C. § 1052(e)(1) .................................................................................................... 4

15 U.S.C. § 1052(e)(3) .................................................................................................... 4

15 U.S.C. § 1052(f) ......................................................................................................... 4

**Other Authorities**

*Aurora Foods, Inc., Case #3658 (06/01/00)* ................................................................... 9

*In re Wileswood, Inc.*, 201 USPQ 400 (T.T.A.B. 1978) .................................................... 3

*In Re Winner International Royalty Corporation*, 1999 WL 149824 (T.T.A.B. 1999) ....... 4

**Rules**

Fed.R.Civ.Pro. 56(e) ...................................................................................................... 7

# GLOSSARY

The following abbreviations will be used:

"AIPC" is plaintiff and counterdefendant American Italian Pasta Company;

"New World" is defendant and counterclaimant New World Pasta Company;

"Best Foods" refers to the Best Foods Division of CPC International, Inc.;

"NAD" is the National Advertising Division of the Council of Better Business Bureaus (see http://www.nadreview.org/);

"Hainline Dec." is the Declaration of Forrest A. Hainline III Supporting New World Pasta's Suggestions in Opposition to AIPC's Motion to Dismiss and Suggestions in Support of New World Pasta's Motion for Partial Summary Judgment.

"Supplemental Oliver Dec." is the Supplemental Declaration of Lloyd E. Oliver filed with these Reply Suggestions;

"Weilbacher" is the Report of William M. Weilbacher.

Emphasis in quotations has been added unless otherwise noted.

AIPC's opposition to New World's motion for partial summary judgment fails to present any competent admissible evidence showing a genuine dispute of any material fact. *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271-272 (8th Cir. 1992).[1] AIPC does not fairly dispute New World's evidence, including a valid and unrebuttedconsumer study, demonstrating that AIPC's advertising claim,"America's Favorite Pasta," deceives a substantial numberof consumers.

## I. THE CLAIM "AMERICA'S FAVORITE PASTA" IS NOT PUFFING

Beneath the bluster, AIPC's authorities and witnesses demonstrate that the claim "America's Favorite Pasta" is not puffery but is rather a specific and measurable claim of product superiority.

"Puffing" is an advertising statement that cannot be proven false because it is not capable of measurement. *United Indus. Corp. v. The Clorox Co.,* 140 F.3d 1175, 1180 (8th Cir. 1998); *Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134 (9th Cir. 1997); *Castrol Inc. v. Pennzoil Co.,* 987 F.2d 939, 946 (3rd Cir. 1993); *Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.,* 228 F.3d 24, 38-39 (1st Cir. 2000). AIPC's witness, Mr. Weilbacher, agrees that the meaning of the claim "America's Favorite Pasta" can be measured, and acknowledges that whether the claim means that Mueller's is a national brand of pasta and the number one selling pasta in the country "can be substantiated by a properly designed consumer research study." (Weilbacher at 1.)[2]

---

[1] Appendix A shows in tabular form New World's facts not fairly disputed, and AIPC's assertions not supported by competent admissible evidence. We have separately filed an Objection to AIPC's Inadmissible Evidence.

[2] Fairly read, Mr. Weilbacher's report categorically rejects AIPC's pretense that its claim "America's Favorite Pasta" is puffing. By criticizing Dr. Wind for beginning his survey by probing whether the phrase has any meaning, Mr. Weilbacher rejects as ridiculous AIPC's fundamental argument.
Footnote continued.

1

Finally, "The doctrine of puffery protects humorous and exaggerated claims from violating the law only when the point that is being exaggerated is true – not when it is false, as it is here." *Charter Communications, Inc. v. Southwestern Bell Tel. Co.*, 202 F.Supp.2d 918, 929 (E.D. Mo. 2001).

## II.    THE CLAIM "AMERICA'S FAVORITE PASTA" IS LITERALLY FALSE

There is no dispute that Mueller's is not the leading brand of pasta sold in the United States, and there is no dispute that Mueller's is not sold in more than half the United States and is not sold anywhere west of the Mississippi (except possibly in some military PXs). The claim is literally false because AIPC represents to consumers, by necessary implication, that Mueller's has the highest share of the market and is sold throughout the country.

### A.    AIPC's Misuse of Trademark Decisions

The literal falsity of AIPC's claim is demonstrated by the cases it misrepresents from the Patent and Trademark Office Trademark Trial and Appeal Board ("the Board"). In *In re Wileswood, Inc.,* 201 USPQ 400 (T.T.A.B. 1978), the Board refused to issue the trademarks "America's Favorite Popcorn" and "America's Best Popcorn." While "America's Best" is purely subjective, the Board understood the claim "America's Favorite" to be a literal and straightforward statement that the applicant had the highest share of the market in all of America:

> It is believed that the purchasing public would understand the notations in issue just as we do; this is reinforced by the absence of any indication that applicant's unpopped popcorn is actually America's favorite (which might be a factually demonstrable statement, at least transitorily, for the popcorn with the highest share of the market) or America's best (which could only be everyone's subjective opinion), so there is no unique marketing position enjoyed by applicant and known to the general public to which either of the slogans could refer.
> *           *           *           *           *

2

> This is not merely Ohio's best popcorn and Ohio's favorite popcorn. In all of America, according to applicant, this is the best and favorite unpopped popcorn.

The applicant had presented no evidence that it was "America's Favorite," that it had "the highest share of the market." "There are no sales figures . . . in the record." 201 USPQ at 401-402. In *In Re Winner International Royalty Corporation,* 1999 WL 149824 (T.T.A.B. 1999) (which bears the full caps legend "THIS DISPOSITION IS NOT CITABLE AS PRECEDENT OF THE T.T.A.B.") the Board refused a trademark registration of "America's Favorite" for an anti-theft steering wheel lock for motor vehicles. The Board understood the claim as a boast of the popularity of the product. To allow the registration would prevent others from making the claim, even if their greater popularity justified it.

A mark shall be refused registration if it is "deceptive," 15 U.S.C. § 1052(a), "deceptively misdescriptive," 15 U.S.C. § 1052(e)(1), or "geographically deceptively misdescriptive," 15 U.S.C. § 1052(e)(3). If a mark is "merely descriptive," it may be registered if the applicant can show that it "has become distinctive of the applicant's goods in commerce." 15 U.S.C. § 1052(f). Accordingly, the Board will allow the registration of "America's Favorite" as a mark where there is proof both that it is true and that it has become so associated in the minds of consumers with the registrant as to have secondary meaning as an indicator of source. As AIPC demonstrates, Barilla, which is the number one selling pasta in the United States, has a pending application for "America's Favorite Pasta." AIPC's claim to be "America's Favorite Pasta" is literally false both descriptively and geographically and could not be registered as a trademark, whether or not emblazoned with Stars and Stripes.

Contradicting its argument that "America's Favorite" is puffing and cannot be registered, AIPC lists some 69 examples of trademarks for products submitted to the United States Patent and Trademark Office using the "America's Favorite" language. AIPC provides no evidence of how these trademarks are used, if they are used in product specific advertising, what the identity

3

of the product is, if the claim can be substantiated or if the claim has been challenged.  Of the 34 trademarks that can be associated with the advertising of specific brands, at least twenty are linked to products that, are, in fact number one in their respective categories.  Only four trademarks out of 69 are associated with products that are clearly not number one in their category.  Further, three of these trademarks do not use the "America's Favorite" claim on the product label.  There is insufficient data to determine the rankings of the others. (See Supplemental Oliver Dec.)

### B.    NAD

The NAD will not allow use of the claim "favorite" on product packaging unless the advertiser can demonstrate that it has the number one position in the market.  (See NAD decisions cited at pages 9-11 of our opening brief.)  AIPC is using the claim "America's Favorite Pasta" in a context where governmental and market agencies have reinforced an expectation that a product-specific claim of "favorite" means that the product is number one.  NAD experience is at least instructive to the Court and admissible under Federal Rule of Evidence 803(18).

### C.    AIPC's Web Search

AIPC's listing of websites to show the use of the claim "America's Favorite" supports New World's position and undermines AIPC's.  Of the 34 food products listed, only five were product specific and at least two of those, Mahatma Rice and Cherry Mash candy bars, are, in fact, number one in their respective categories.  There is insufficient public data to determine the rankings of the other three products (Cry Baby sour gum,  Chachies fresh salsa and Steak

Escape, a chain of fast food restaurants). (Supplemental Oliver Dec.)[3] *Thus, despite reviewing 120,000 websites, AIPC could not identify a clear example of a product specific claim for a food and beverage product making the claim "America's Favorite" where the product is not the market leader in its industry.*[4]

In his affidavit, Mr. Geliebter reports 39 additional examples of "America's Favorite" trademarks unrelated to food and beverages. The vast majority of these examples are irrelevant because they are not product specific. (Supplemental Oliver Dec). Only three trademarks("America's Favorite Carpet," "America's Favorite Car Rack and America's Favorite Pedal Boats") are product specific and two of those can be substantiated to be number one in their categories. The product ranking of the carpet brand cannot be determined from publicly available information.

## III. THE CLAIM "AMERICA'S FAVORITE PASTA" CONVEYS A FALSE MESSAGE TO CONSUMERS

AIPC fails to offer any competent admissible evidence to counter New World's evidence that a substantial number of consumers (over 40%) perceive AIPC's advertising claim "America's Favorite Pasta" to convey that Mueller's is the number one selling pasta in the country. A substantial number of consumers (over 50%) perceive AIPC's advertising claim "America's Favorite Pasta" to convey that Mueller's is a national brand of pasta available everywhere in the country. (Hainline Dec. ¶12, Wind Dec., Exhibit 10.) Mr. Weilbacher merely

---

[3]     Neither of these products appear to use the "America's Favorite" language on their products' labels.

[4]     Although not mentioned in the brief, Mr. Geliebter also refers in his Affidavit to non-food items using the "America's Favorite" language. However, nearly all of the items shown are irrelevant because they are not product specific. There is only one example that is in any sense product specific: America's Favorite Golf Schools. This claim that could not be verified one way or the other. (Supplemental Oliver Dec.)

speculates that if he had bothered to conduct a study, his results would "likely" be different. (Weilbacher at 6.)

### D. Dr. Wind's Study Is Not Fairly Disputed

New World's expert, Dr. Wind, is plainly qualified by knowledge, skill, training, experience and education to design and interpret a survey in expert testimony (Wind Resume, Ex. 11.)[5]   He concluded that a substantial number of consumers (over 40%) perceive AIPC's advertising claim "America's Favorite Pasta" to convey that Mueller's is the number one selling pasta in the country.   A substantial number of consumers (over 50%) perceive AIPC's advertising claim "America's Favorite Pasta" to convey that Mueller's is a national brand of pasta available everywhere in the country.   An overwhelming number of consumers (88%) believe that the claim "America's Favorite Pasta" has meaning, is measurable, and/or that Mueller's would have to have substantiation to make the claim, i.e., that it is not puffery.   Dr. Wind's study and opinions are admissible, probative evidence that AIPC's claim conveys a false message to consumers. *See Southland Sod Farms, supra,* 108 F.3d at 1143.[6]

Dr. Wind's survey and opinion shifted the burden to AIPC to come forward with equally admissible, probative evidence demonstrating that the claim "America's Favorite Pasta" does not falsely convey to consumers that Mueller's is the number one selling pasta and is sold throughout the United States. *Fed. Deposit Ins. Corp. v. Bell,* 106 F.3d 258, 263 (8th Cir. 1996); *Marshall v. UNUM Life Ins. Co.,* 13 F.3d 282, 284 (8th Cir. 1994).   Instead, Mr. Weilbacher

---

[5] AIPC complains that no discovery has tested Dr. Wind's ability to meet the standards for conducting a survey.   AIPC neither sought a continuance nor submitted an affidavit showing what specific facts discovery might show.   Fed.R.Civ.Pro. 56(f); *Dulany v. Carnahan*, 132 F.3d 1234, 1238 (8th Cir. 1997); *Crowell v. Campbell Soup Co.,* 264 F.3d 756, 760 (8th Cir. 2001).   Dr. Wind's expertise cannot in good faith be challenged.

offers nothing but speculation and conjecture about what the survey he did not bother to conduct, might show (Weilbacher at 6):

> The study results are **likely** in the present study, therefore, to be significantly different than they **would have been** if the respondent had simply been exposed to packages of Mueller's dry pasta, been asked to choose one package, and then asked a simply straightforward question about the meaning of "America's Favorite Pasta."

When a motion for summary judgment is supported by expert testimony, the testimony of the opposing expert must be disregarded when it is based on speculation and conjecture. Studies are required to counter the studies of the moving party's expert. *Jackson v. Anchor Packing Co.,* 994 F.2d 1295, 1303-1304 (8th Cir. 1993) (expert who provided no counter study and speculated on what might occur could not defeat summary judgment based on moving party's expert study). Mr. Weilbacher does not offer specific facts contradicting Dr. Wind's survey; he speculates on what facts he **might** find in a survey he did not conduct. "We agree with our sister circuits and hold that a party may not avoid summary judgment solely on the basis of an expert's opinion that fails to provide specific facts from the record to support its conclusory allegations. [The opposing expert's] affidavit, though it purports to be based upon a review of the evidence, fails to provide specific facts to back up its conclusory allegations." *Evers v. General Motors Corp.,* 770 F.2d 984, 986-987 (11th Cir. 1985). *See, Mid-State Fertilizer Co. v. Exchange Nat'l Bank Of Chicago,* 877 F.2d 1333, 1339 (7th Cir. 1989) ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.")

Mr. Weilbacher's speculation and conjecture, his affidavit "full of assertions but empty of facts" *Mid-State Fertilizer Co.,* 877 F.2d at 1339) cannot defeat New World's motion for summary judgment. *Matthiesen v. Banc One Mortgage Corp.,* 173 F.3d 1242, 1247 (10th Cir.

---

[6] Dr. Wind's study not only demonstrated that AIPC's claim is measurable, but also what consumers
Footnote continued.

1999).

### E.    The Levels of Deception are Significant

The levels of deception that Dr. Wind found are far above the percentage threshold for allowable deception.   Moreover, the level of deception Mr. Weilbacher recognized (10.9%, Weilbacher at 9), even under his flawed analysis, is not insignificant or insubstantial.   As the Eighth Circuit found in *Humble Oil & Refining Co. v. American Oil Co.,* 405 F.2d 803, 817 (8th Cir. 1969):

> Despite all this, the surveys, singly and as a group, do not dispel the existence of a percentage of confusion which we may not dismiss as de minimis. The percentage figure varies from 11% to as high as 49%.   The lower figure itself is not an insignificant percentage.   The record discloses that the number of motorists in the Midwest is in the millions.   Eleven per cent of a figure in the millions is a large number.

In *Mutual Of Omaha Insurance Co. v. Novak,* 836 F.2d 397, 400 (8th Cir. 1988) (10% confusion was "strong evidence" of a likelihood of confusion, and the survey was to be given "substantial weight unless seriously flawed").

Other courts are in accord.   *Coca-Cola Co. v. Tropicana Products, Inc.,* 690 F.2d 312 (2nd Cir. 1982) (reversing the trial court, the Second Circuit found that 7.5% deception would violate the Lanham Act); *Goya Foods, Inc. v. Condal Distrib., Inc.,* 732 F.Supp. 453, 457 n. 7 (S.D.N.Y. 1990) (any figure greater than 7% is meaningful confusion); *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf v. Steinway & Sons,* 365 F.Supp. 707, 716 (S.D.N.Y. 1973) (confusion of 7.7% and 8.5% "are strong evidence of the likelihood of confusion which the Lanham Act was designed to prohibit"); *McNeilab, Inc. v. American Home Products Corp.,* 675 F.Supp. 819 (S.D.N.Y. 1987) (8-13% deception, accepting defendant's figures, would violate the

believe AIPC did measure, *i.e.,* market share and geographic scope of sales.

8

Lanham Act); *Jockey Int'l, Inc. v. Burkard,* 185 U.S.P.Q. 201 (S.D. Cal. 1975) (11% confusion violated the Lanham Act); *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.,* 129 F.Supp.2d 351 (D.N.J. 2000) ("a 15.5% of consumer confusion is sufficient to show that, under the Lanham Act, the advertising tends to deceive or mislead consumers"); *James Burrough Ltd. v. Sign of the Beefeater, Inc.,* 540 F.2d 266 (7th Cir. 1976) (disagree with the district court that 15% confusion was "small," and found the amount sufficient to violate the Lanham Act); *Lon Tai Shing Co., Ltd. v. Koch+Lowy,* 1992 WL 18806 (S.D.N.Y. 1992) (18% deception violates the Lanham Act); *RJR Foods, Inc. v. White Rock Corp.,* 603 F.2d 1058 (2nd Cir. 1979) (15-20% deception violates the Lanham Act).

The level of deception AIPC's claim causes is particularly significant because the consumers encounter the claim "in the store where consumers are most likely to rely on them in making purchasing decisions." *Aurora Foods, Inc.,* [NAD] Case #3658 (06/01/00).

## F. The Irrelevance of Out-of-Context Verbatims

AIPC argues that it should continue to deceive the public (though not put this way) because some consumers were not deceived. To drive home the point, AIPC quotes from consumers whose answers expressed no deception. These statements are completely irrelevant to the issue of whether AIPC's "America's Favorite Pasta" claim deceives a significant number of consumers. Whatever consumers who are not deceived might say, it is incontroverted that a substantial number of consumers (over 40%) perceive AIPC's advertising claim "America's Favorite Pasta" to convey that Mueller's is the number one selling pasta in the country. A substantial number of consumers (over 50%) perceive AIPC's advertising claim "America's Favorite Pasta" to convey that Mueller's is a national brand of pasta available everywhere in the country. An overwhelming number of consumers (88%) believe that the claim "America's Favorite Pasta" has meaning, is measurable, and/or that Mueller's would have to have

9

substantiation to make the claim.  New World has met its burden to show significant deception.  The remaining 60%, 50% and 12% will give AIPC many colorful quotes, but each is meaningless to the issues in the case.

### G.     What Webster Pretends AIPC Meant to Say Is Irrelevant

Mr. Webster protests that what AIPC really means by using the claim "America's Favorite Pasta" is to claim that Mueller's is "An All-American Pasta."  Mr. Webster's purported intention is irrelevant to the issue of consumer confusion, where the issue is what consumers perceive.  *Abdallah v. Pileggi*, 153 F.3d 948, 1998 WL 180491, **4 (Fed. Cir. 1998) (the defendant's "subjective belief is largely irrelevant to the meaning of what the word "patented" means to the relevant consumer"); *Novartis*, 290 F.3d at 589; *Charter Communications,* 202 F.Supp.2d at 929.

## IV.   AIPC'S WILLFULNESS

AIPC's claim is intentionally false. Mr. Webster admits that AIPC knows it is not the No. 1 pasta brand and is a regional product.  He admits AIPC decided to use the claim "America's Favorite Pasta" in order to shore up its falling market position. AIPC's use of the false claim to be "America's Favorite Pasta" is willful.

## V.   CONCLUSION

AIPC's claim that Mueller's is "America's favorite" is not "puffing."  Even AIPC's witness, Mr. Weilbacher, recognizes that the claim can be measured.  AIPC's authorities show that its claim to be "America's Favorite" means that Mueller's is No. 1 and sold nationally, which it is not.  Measured and unrebutted consumer perception shows a significant level of deception.  AIPC's deceptive claim is deliberate and willful.  New World's motion for partial summary judgment should be granted.

10

Dated:  December 13, 2002                    /s/

Forrest A. Hainline III
District of Columbia Bar No. 376957
Admitted Pro Hac Vice
Law Office of Forrest A. Hainline III
5335 Wisconsin Avenue, N.W. Suite 440
Washington, D.C. 20015
(202) 966-1962 (Phone)
(202) 966-1891 (Fax)
Aikidolaw@aol.com

Raymond L. Sweigart
Admitted Pro Hac Vice
Pillsbury Winthrop LLP
1600 Tysons Boulevard
McLean, Virginia 22102
703-905-2000
703-905-2500 (fax)
rsweigart@pillsburywinthrop.com

Stanley D. Davis, MO No. 46411
Brent N. Coverdale, MO No. 50696
Shook, Hardy & Bacon L.L.P.
One Kansas City Place, 1200 Main Street
Kansas City, Missouri 64105-2118
816-474-6550
816-421-5547 (fax)

**Attorneys for Defendant and
Counterclaimant New World Pasta Company**

**OF COUNSEL:**

Cary A. Metz
Vice President & General Counsel
New World Pasta Company
85 Shannon Road
Harrisburg, PA 17112
717- 526- 2203
717-526-2488 (fax)

# APPENDIX A

## FACTS NOT FAIRLY IN DISPUTE

AIPC does not dispute or does not fairly dispute with competent admissible evidence any material fact. The additional facts AIPC proffers are not supported by competent admissible evidence.

### A. New World's Statement of Facts Are Not Fairly Disputed

| | |
|---|---|
| 1. Since 1997, AIPC has manufactured Mueller's dried pasta. From 1997 until 2000, AIPC manufactured Mueller's dried pasta for Best Foods. On or about November 14, 2000, AIPC purchased the exclusive rights to own all aspects of the Mueller's pasta business, and assumed the responsibility for packaging, distribution, pricing and marketing of the Mueller's brand. (Hainline Dec. ¶3, Exhibit 1, p. 2; Hainline Dec. ¶4, Exhibit 2.) | Not disputed. |
| 2. AIPC has continuously used the advertising claim "America's Favorite Pasta" on and in connection with the sale of Mueller's dried pasta since it purchased the brand. (Complaint ¶7.) | Not disputed by competent admissible evidence. |
| 3. AIPC uses the advertising claim "America's Favorite Pasta" on its packaging, on product shelves next to competitive brands of pasta, at the point of purchase. (Hainline Dec. ¶5, Exhibit 3.) AIPC also uses the claim "America's Favorite Pasta" on material sent to consumers. (Hainline Dec. ¶6, Exhibit 4.) | Not fairly disputed. |
| 4. During the period before AIPC purchased the Mueller's brand from Best Foods, Best Foods sold packages of Mueller's dried pasta without the advertising claim "America's Favorite Pasta." (Hainline Dec. ¶7, Exhibit 5.) | Not disputed by competent admissible evidence. |

Appendix 1

| | |
|---|---|
| 5. Since AIPC purchased the Mueller's brand, the Mueller's brand has declined precipitously in volume sold from 28.2 million pounds to 22.5 million pounds, for a total reduction of more than 20 percent or 5.7 million pounds, while the sales of the No. 1 brand of dried pasta in the United States, Barilla, have increased. Based recent data, Mueller's has only half the sales revenues of Barilla. (Hainline Dec. ¶8, Oliver Dec., Exhibit 6). | Not disputed by competent admissible evidence. |
| 6. AIPC acknowledges in its Annual Report that Mueller's is not the leading brand of dried pasta in the United States, but is "*a* consumer favorite" only in some markets east of the Mississippi River. (Hainline Dec. ¶9, Exhibit 7, p.11.) | Not disputed. |
| 7. AIPC has acknowledged in its Mueller's website that Mueller's is not sold in more than half the United States and is not sold anywhere west of the Mississippi. (Hainline Dec. ¶3, Exhibit 1, pp. 5-7.) | Not disputed. |
| 6. "America's Favorite" claims are used by the following companies, each of which is the leader in its category (Hainline Dec. ¶8, Oliver Dec., Exhibit 6):<br><br>a. Nabisco uses the "America's Favorite" caption on boxes of its Oreo Cookies. Data from IRI for calendar year 2001 show Oreo to be the sales leader with annual revenues of $516.1 million and having the leading market share of 13.8 percent for all cookie brands.<br>b. The claim "America's Favorite" appears on bottles of French's Mustard. French's relies on data from IRI showing that French's has the leading market share of 30 percent for all mustard.<br>c. Cadbury Schweppes' Motts Division includes "America's Favorite" language on bottles of its Mr. and Mrs. T's Bloody Mary Mix and claims the brand is number 1 with a 64 percent market share.<br>d. Cartons of Nesquik Flavored Milk contain "America's Favorite" as a caption and IRI shows that Nesquik is the flavored milk brand with the most revenues in a recent 52-week period.<br><br>e. Boxes of Jiffy Corn Muffin Mix include | Not disputed by competent admissible evidence, and not disputed by the evidence cited.<br><br>New World Pasta's expert Mr. Oliver testified properly from market reports and commercial publications under Federal Rules of Evidence 702, 703 and 803(17). |

"America's Favorite" language. Based on recent IRI annual data for unit sales, Jiffy is the number 1 brand of corn muffin mix.

f. The "America's Favorite" caption appears on bottles of Heinz Chili Sauce and IRI reports Heinz to be the leader in this category.

g. Heinz in a press release characterized its Heinz Ketchup as "America's Favorite." IRI data for the year ending August 2001 shows Heinz' Ketchup with a 58.6 percent market share.

h. Compaq in a 1999 press release claimed its Compaq Presario internet personal computers "Remained America's Favorite Brand" based on industry studies showing Compaq's Presario to have the leading market share for personal computers over the 12 months ending October, 1999.

i. A recent Kendall-Jackson press release touts its Chardonnay as being "America's Favorite" because it is the leading seller of Chardonnays for the past 8 years.

| | |
|---|---|
| 7. ABC's standards for advertising on the network require that all performance, preference and taste claims be supported by adequate substantiation. ABC's standards define puffery as "subjective claims." These do not require substantiation so long as the "clear net impression upon the viewing public is that these claims are subjective, personal preference or hyperbole." "Slogans that make claims must be substantiated." (Hainline Dec. ¶10, Exhibit 8, pp. 28-29.) | Not disputed by competent admissible evidence. |
| 8. The Washington Post reported on October 3, 2002 that both CBS and NBC claimed to have "the Number 1 new comedy." According to the Post, CBS's claim is accurate; NBC's is not, although it had been accurate based on early Nielsen data. NBC changed its promo and stopped calling its program No. 1 when it realized the inaccuracy of the advertising claim. (Hainline Dec. ¶11, Exhibit 9.) | Not disputed by competent admissible evidence. |

| | |
|---|---|
| 9. A substantial number of consumers (over 40%) perceive AIPC's advertising claim "America's Favorite Pasta" to convey that Mueller's is the number one selling pasta in the country. A substantial number of consumers (over 50%) perceive AIPC's advertising claim "America's Favorite Pasta" to convey that Mueller's is a national brand of pasta available everywhere in the country. An overwhelming number of consumers (88%) believe that the claim "America's Favorite Pasta" has meaning, is measurable, and/or that Mueller's would have to have substantiation to make the claim. (Hainline Dec. ¶12, Wind Dec., Exhibit 10.) | Not disputed by competent admissible evidence. |
| 10. On May 21, 2002, New World Pasta demanded that AIPC assure New World Pasta in writing no later than May 29, 2002 that by July 2, 2002, AIPC would cease all use of the claim "America's Favorite Pasta" for Mueller's products in any manner. (Hainline Dec. ¶¶13 and 14, Exhibit 12 and 13.) | Not disputed. |
| 11. On May 31, 2002, AIPC wrote to New World Pasta that it would respond to New World Pasta's demand by June 24, 2002. (Hainline Dec. ¶15, Exhibit 14.) | Not disputed. |
| 12. On June 4, 2002, New World Pasta wrote to AIPC and gave an extension until June 24, 2002 to respond. (Hainline Dec. ¶16, Exhibit 15.) AIPC's response was to file this lawsuit on June 20, 2002, seeking a declaratory judgment that its claim "America's Favorite Pasta" does not violate § 43(a) of the Lanham Act, Lanham Act, 15 U.S.C. § 1125(a). New World Pasta filed its Answer and Counterclaim on August 2, 2002 under § 43(a) of the Lanham Act and the unfair competition laws of states where AIPC sells Mueller's pasta. | Not disputed. AIPC's additional comments are not supported by competent admissible evidence. |
| 13. On June 25, 2002, AIPC's counsel, Thomas H. Van Hoozer wrote to Mr. Metz in on behalf of Mr. Webster in response to Mr. Metz's May 21, 2002 letter. Mr. Van Hoozer told Mr. Metz that AIPC had sued New World Pasta on June 20, 2002. Mr. Van Hoozer asserted that the claim "America's Favorite Pasta" is "subjective and mere generalization of such a character that no specific factual claim is made." (Hainline Dec. ¶ 17, Exhibit 15.) | Not disputed. |
| 14. Although styled only a motion to dismiss New World | Not disputed by competent |

Pasta's counterclaim, AIPC's motion is really a motion for summary judgment on its claim as well, based on the unsupported (and false) assertion that its advertising claim "America's Favorite Pasta" cannot be measured and therefore cannot be false. As noted above, 88% of consumers understand Mueller's claim to be "America's Favorite Pasta" to have meaning, that it is measurable and/or that Mueller's would have to have substantiation to make the claim. (Hainline Dec. ¶12, Wind Dec., Exhibit 10.)

admissible evidence.

## B. AIPC's Additional Facts Are Not Fairly Supported

AIPC's further statements of facts are not supported by competent admissible evidence.

A. Third party use of "America's Favorite" includes the following information contained upon a search of Internet websites relating to the food and beverage field: "America's Favorite Candy", "America's Favorite Chicken", "…America's Favorite Sandwich", "America's Favorite Brand Name Foods", "America's Favorite Family Restaurants", "America's Favorite Wild Game Recipes", "America's Favorite Beer and Wine Club Selections", "America's Favorite Comfort Cookbook", "Growing America's Favorite Vegetables", "Mahatma-America's Favorite Rice", "America's Favorite Fowl: Chickens", "Apples-Nutritious and Tasty-America's Favorite Fruit Snack", "Cherry Mash: America's Favorite Cherry Flavored Candy Bar", "Saluting America's Favorite Fruit-Apples", "America's Favorite Food" (referring to chili), "America's Favorite Hot Dogs", "America's Favorite Low Calorie, Sugar-Free Foods and 11/13/2002 2:00 PM Beverages", "America's Favorite Pot Roast", "Cry Baby-America's Favorite Sour Gum", "America's Favorite Cheesesteak, Steak Escape", "Hot Licks-America's Favorite Hot Sauce & Fiery Food Store", "America's Favorite Quick Breads & Desserts", "America's Favorite Snacks Gift Basket", "America's Favorite Dinner Show", "America's Favorite Brand Name Light Cooking", "America's Favorite Fresh Salsa", "America's Favorite Treat" (referring to ice cream), "America's Favorite: Apple Pie", "America's Favorite

AIPC's listing of websites to show the use of the claim "America's Favorite" supports New World's position and undermines AIPC's. Of the 34 food products listed, only five were product specific and at least two of those, Mahatma rice and Cherry Mash candy bars, are, in fact, number one in their respective categories. There is insufficient public data to determine the rankings the other three products (Cry Baby sour gum, Chachies fresh salsa and Steak Escape, a chain of fast food restaurants ). Only one of these products, Steak Escape, appears to use the "America's Favorite" language on its products' label. *Thus, despite reviewing 120,000 websites, AIPC could not identify a*

Pork Chops", "America's Favorite Beef Recipes", "America's Favorite Pie Plant", "America's Favorite Root." See Geliebter Aff. Ex. 1.

*clear example of a product specific claim for a food and beverage product making the claim "America's Favorite" where the product is not the market leader in its industry.*

Supplemental Declaration of Lloyd E. Oliver.

B. The following trademarks which are registered or pending in the United States Patent and Trademark Office incorporate the phrase "America's Favorite …": AMERICA'S FAVORITE FEAST (Reg. No. 2,639,844); AMERICA'S FAVORITE DOWN PAYMENT GIFT PROGRAM (Ser. No. 78/092,948); BARILLA-AMERICA'S FAVORITE PASTA (Ser. No. 78/136,703); AMERICA'S FAVORITE (Ser. No. 78/075,143); AMERICA'S FAVORITE COOKIE (Reg. No. 2,572,410); AMERICA'S FAVORITE PIZZA FEAST (Reg. No. 2,558,945); AMERICA'S FAVORITE SNACK CAKE (Reg. No. 2,641,675); AMERICA'S FAVORITE SHOPPING NEWS (Ser. No. 76/449,651); AMERICA'S FAVORITE MARKET PLACE (Ser. No. 76/440,765); TUMARO'S AMERICA'S FAVORITE GOURMET TORTILLA (Ser. No. 76/302,605); AMERICA'S FAVORITE CHEESESTEAKS STEAK ESCAPE (Reg. No. 2,604,337); AMERICA'S FAVORITE MATTRESS (Ser. No. 76/388,158); AMERICA'S FAVORITE FLAVORS (Ser. No. 76/281,737); AMERICA'S FAVORITE WATER HEATER (Reg. No. 2,566,340); AMERICA'S FAVORITE CHEESESTEAK (Reg. No. 2,561,713); AMERICA'S FAVORITE GOLF SCHOOLS (Reg. No. 2,535,729); AMERICA'S FAVORITE MUSHROOM (Reg. No. 2,520,064); AMERICA'S FAVORITE 11/13/2002 2:00 PM 7 REPLACEMENT WINDOW (Reg. No. 2,506,337); AMERICA'S FAVORITE VOICE MAIL (Reg. No. 2,590,036); AMERICA'S FAVORITE FAX ASSISTANT (Reg. No. 2,590,034); AMERICA'S FAVORITE RECEPTIONIST (Reg. No. 2,590,033); AMERICA'S FAVORITE WAY TO PAY (Reg. No. 2,520,689); AMERICA'S FAVORITE MUSIC (Reg. No. 2,514,110); AMERICA'S FAVORITE WORKBOOTS (Reg. No. 2,479,220); AMERICA'S FAVORITE SKINLESS CHICKEN SINCE

Objected to as incomplete and irrelevant without additional information.

AIPC's list of some 69 examples of trademarks for food and beverage products submitted to the United States Patent and Trademark Office using the "America's Favorite" language provides no evidence of how these trademarks are used, if they are used in product specific advertising, what the identity of the product is, if the claim can be substantiated or if the claim has been challenged. Of the 34 trademarks that can be associated with specific food and beverage products, at least twenty are linked to products that, are, in fact number one in their respective categories. Only four trademarks out of 69 are associated with products that are clearly not number one in their respective categories. There is insufficient data to determine the rankings of the others.

1981 (Reg. No. 2,420,309); AMERICA'S FAVORITE SOUR GUM (Reg. No. 2,347,915); AMERICA'S FAVORITE TRUCK CAMPER (Reg. No. 2,467,054); AMERICA'S FAVORITE ON-LINE SHRINK (Reg. No. 2,367,259); TUMARO'S GOURMET TORTILLAS-AMERICA'SFAVORITE (Reg. No. 2,419,870); TEMO SUNROOMS AMERICA'S FAVORITE ENVIRONMENT (Reg. No. 2,390,933); CHICKEN AMERICA'S FAVORITE (Reg. No. 2,315,085; 2,308,087); AMERICA'S FAVORITE (Reg. No. 2,263,243); AMERICA'S FAVORITE KARTING STORE! (Reg. No. 2,392,406); MISTER SPARKY AMERICA'S FAVORITE ELECTRICIAN (Reg. No. 2,331,109); AMERICA'S FAVORITE FOODS PRESTO (Reg. No. 2,299,622); AMERICA'S FAVORITE CANDIES (Reg. No. 2,359,173); AMERICA'S FAVORITE OMELETES (Reg. No. 2,242,272); BONGO BLUE JEANS ALWAYS AMERICA'S FAVORITE (Reg. No. 2,224,026); ATLANTIC CITY AMERICA'S FAVORITE PLAYGROUND (Reg. No. 2,209,885); DELTA CREAMCOATAMERICA'S FAVORITE ACRYLIC PAINT (Reg. No. 2,425,990); AMERICA'S FAVORITE MADE FRESH (Reg. No. 2,164,875); AMERICA'S FAVORITE CORN DOG (Reg. No. 2,154,372); AMERICA'S FAVORITE CHOCOLATE CHIP COOKIE! (Reg. No. 2,149,887); AMERICA'S FAVORITE FRIES (Reg. Nos. 2,360,994; 2,244,139); AMERICA'S FAVORITE SINCE FBI (Reg. No. 2,119,233); IT'S AMERICA'S FAVORITE JELLY BEAN (Reg. No. 2,077,329); AMERICA'S FAVORITE KETCHUP (Reg. No. 2,098,790); AMERICA'S 11/13/2002 2:00 PM FAVORITES (Reg. No. 2,076,574); AMERICA'S FAVORITE FAVORS (Reg. No. 2,054,560); AMERICA'S FAVORITE SOFT PRETZEL (Reg. No. 2,155,994); AMERICA'S FAVORITE (Reg. No. 1,706,042); AMERICA'S FAVORITE MUSHROOM (Reg. No. 1,777,517); FAT FRED'S ORIGINAL SAUCE THE ORIGINAL BAR-B-Q-SAUCE FROM AMERICA'S FAVORITE AWARD WINNING RIBBER FAT FRED "IT'S ADDICTIVE" (Reg. No. 2,131,594); AMERICA'S FAVORITES ON THE GO! (Reg. Nos. 2,122,025; 2,034,322); BUMPERS AMERICA'S FAVORITE FOODS (Reg. No. 1,924,317); PLAY AMERICA'S FAVORITE PASTIME WITH AMERICA'S FAVORITE BEER (Reg. No. 2,063,618); AMERICA'S FAVORITE STORES FOR PEOPLE WHO

Supplemental Declaration of Lloyd E. Oliver.

Appendix 7

LOVE TO MAKE MUSIC (Reg. No. 1,858,052); AMERICA'S FAVORITE OIL CHANGE (Reg. No. 1,899,204); AMERICA'S FAVORITE MUSIC (Reg. No. 1,810,310); AMERICA'S FAVORITE (Reg. Nos. 1,817,597; 1,791,096); AMERICA'S FAVORITE HOLIDAY CANDY (Reg. No. 1,837,304); AMERICA'S FAVORITE PIZZA FEAST (Reg. No. 1,791,773); AMERICA'S FAVORITE 25K (Reg. No. 1,674,342); NATIONAL EXAMINER AMERICA'S FAVORITE FAMILY WEEKLY (Reg. No. 1,673,418); AMERICA'S SNACK FAVORITE (Reg. No. 1,638,019); AMERICA'S FAVORITE NEIGHBOR (Reg. No. 1,601,596); AMERICA'S FAVORITE MAIL (Reg. No. 1,605,872); "AMERICA'S FAVORITE BOAT RIDE" (Reg. No. 1,296,999); AMERICA'S FAVORITE NUTS (Reg. No. 782,607). See USPTO Records current as of November 1, 2002 and attached to Geliebter Affidavit Ex. 3.

| | |
|---|---|
| C. The advertising and packages for AIPC's MUELLER'S brand of dried pasta products have made no claim to MUELLER'S being the "Number 1" seller by any measure. See Webster Aff. ¶¶ 16-17. | Disputed. Not supported by competent admissible evidence. |
| D. With the exception of MUELLER'S PASTA LABELLA packages, each package of MUELLER'S brand packaged dried pasta which displayed the phrase "America's Favorite Pasta" also stated the following: | Admitted as to packages of Mueller's sold since AIPC purchased the brand. Disputed as to any other time period as not being supported by competent admissible evidence. |

> For over 130 [135] years, pasta lovers have enjoyed the great taste of Mueller's. Our pasta cooks to perfect tenderness every time because it's made from 100% pure semolina picked from the highest quality durum wheat. Taste why Mueller's is America's Favorite Pasta.

See Webster Aff. ¶ 17.

| | |
|---|---|
| E. MUELLER'S claims a brand heritage starting in 1867 and has been continuously sold to the present. See Webster Aff. ¶ 11. | Disputed as not being supported by competent admissible evidence. |
| F. The following answers from the Wind Survey to Q4 a-c demonstrates that the phrase "America's Favorite Pasta" is an ambiguous, non-specific self laudatory phrase of public acceptance [out of context excerpts]. | Disputed as being argument not supported by any evidence. No competent survey witness could fairly |

(Volume II - Wind Survey):

testify that verbatims pulled out of context, without an analysis of all the responses with percentages and considerations of whether the responses can be projected to a population, would make AIPC's conclusion.

See Supplemental Report of Yoram (Jerry) Wind

**CERTIFICATE OF SERVICE**

I hereby certify that on December 13, 2002, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

| | |
|---|---|
| Thomas H. Van Hoozer | tvh@hoveywilliams.com |
| Robert D. Hovey | rdh@hoveywilliams.com |
| Scott R. Brown | srb@hoveywilliams.com |
| William R. Hansen | WRhansen@duanemorris.com |
| Brent N Coverdale | bcoverdale@shb.com; |
| Stanley Daryl Davis | sddavis@shb.com |

I also sent the foregoing document to the following non CM/ECF participant:

Raymond L Sweigart (rsweigart@pillsburywinthrop.com).

        /s/ Forrest A. Hainline III
        Forrest A. Hainline III
        District of Columbia Bar No. 376957
        Admitted Pro Hac Vice
        Law Office of Forrest A. Hainline III
        5335 Wisconsin Avenue, N.W. Suite 440
        Washington, D.C. 20015
        (202) 966-1962 (Phone)
        (202) 966-1891 (Fax)
        Aikidolaw@aol.com